UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CYNTHIA B.,

                                    Plaintiff,

v.                                                        1:23-CV-00657
                                                            (DNH/ML)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                              OF COUNSEL:


OLINSKY LAW GROUP                    HOWARD D. OLINSKY, ESQ.
  *Attorneys for Plaintiff*
250 S. Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.        GEOFFREY M. PETERS, ESQ.
  *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge


## <u>REPORT-RECOMMENDATION</u>

        Plaintiff Cynthia B. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (Dkt. No.

1.)  This matter was referred to me for Report and Recommendation by the Honorable David N.

Hurd, United States District Court Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).

(Dkt. No. 7.)  This case has proceeded in accordance with General Order 18.

Currently before this court are Plaintiff's motion for judgment on the pleadings and

Defendant's motion for judgment on the pleadings. (Dkt. Nos. 12, 14, 15.)  For the reasons set

forth below, this court recommends the District Court grant Plaintiff's motion for judgment on

the pleadings, deny Defendant's motion for judgment on the pleadings, and remand the

Commissioner's decision for further administrative proceedings.

## I.     PROCEDURAL HISTORY

On January 11, 2021, Plaintiff protectively filed an application for DIB, alleging

disability dating from October 24, 2018. (Administrative Transcript ("T.") 281-282.)  Her

application was denied initially on May 7, 2021, and her request for administrative

reconsideration was denied on October 7, 2021. (T. 132-143, 172-183.)  Plaintiff's subsequent

request for a hearing was granted. (T. 217-221.)  On January 25, 2022, Plaintiff and vocational

expert ("VE") Amy Leopold testified by telephone before Administrative Law Judge ("ALJ")

Brian W. Lemoine. (T. 30-67.)  The ALJ issued an unfavorable decision on February 22, 2022.

(T. 10-29.)  The Appeals Council denied Plaintiff's request for review on April 6, 2023. (T. 1-6.)

Plaintiff commenced this proceeding on June 2, 2023 to challenge the Commissioner's

denial of disability benefits. (Dkt. No. 1.)

## II.     GENERALLY APPLICABLE LAW

### A.     Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.

Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts

whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if

3

the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**B.    Standard for Benefits[1]**

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity"

---

[1]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

4

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## III.   **FACTS**

As of the date of the ALJ's decision, Plaintiff was 50 years old. (T. 281). During the relevant period, she lived with her husband and an adult daughter. (T. 932, 1169). Plaintiff is a high school graduate who subsequently obtained a four year college degree in health administration. (T. 932.) Her employment history prior to her alleged onset date includes positions as a pharmacy technician and a reservation clerk at a hotel. (T. 42-44.) The record also includes brief employment after the alleged onset date. Plaintiff testified that her husband was general manager at a hotel, and that she was paid to use her personal vehicle for a three month period in 2021 to deliver supplies when the hotel hosted events. (T. 39-41.) She testified that the job did not require any heavy lifting, but she left the position because sitting in the car for extended periods exacerbated her back pain. (T. 40-42.)

Plaintiff has a lengthy treatment history for neck and lower back pain that includes two cervical neck surgeries prior to the alleged onset date. (T. 45, 938.) She testified that her pain was getting progressively worse and was aggravated by sitting or standing for extended periods. (T. 42.) She also reported balance problems that stemmed from her underlying neck pain and her treatment history included multiple hospitalizations for injuries suffered in falls. (T. 49-50, 1306, 1341.) Plaintiff testified that she used a cane inside and outside her home on recommendation of

her doctor and switched to a walker on days when her balance felt particularly unstable. (T. 46-47.)

With regard to mental health impairments, Plaintiff has received treatment for major depressive disorder and anxiety since at least 2016. (T. 1278, 2245.)  Prior to her alleged onset date, Plaintiff had been twice hospitalized following intentional overdoses of prescription medication and was hospitalized after a similar suicide attempt in December 2020. (T. 1360, 1376, 2245.)  Plaintiff testified that she had little recollection of the details of her 2020 hospitalization but believes that it resulted from a poor reaction to a since discontinued psychiatric medication. (T. 52.)  At the time of her January 25, 2022 hearing, Plaintiff testified that she felt that her mental health symptoms were improving on her current medication, with some days "harder than others." (T. 53.)

The record includes Plaintiff's medical and mental health treatment history.  Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV.    THE ALJ'S DECISION

As an initial matter, the ALJ determined that Plaintiff met the insured status requirements through December 31, 2022. (T. 16.)  Based upon his review of the administrative record, the ALJ next found that although Plaintiff had engaged in substantial gainful activity between July 2021 and October 2021, there had been a continuous twelve month period after the alleged onset date when Plaintiff had not engaged in substantial gainful activity. (*Id*.)  At step two, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease of the cervical and lumbar spine, status post cervical fusion; degenerative joint disease shoulders; obesity status post gastric sleeve surgery and ventral hernia repair; and medullary sponge

kidneys with recurrent nephrolithiasis."[2] (T. 16-18.)  The ALJ also considered Plaintiff's diagnosed mental health impairments of adjustment disorder, post-traumatic stress disorder, depression, and anxiety disorder, but found them all to be non-severe. (T. 17.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment, including Listing 1.15 (disorders of the skeletal spine resulting in compromise of nerve roots), Listing 1.18 (abnormality of a major joint), and Listing 6.05 (chronic kidney disease with impairment of kidney function). (T. 18.)  Next, the ALJ found that Plaintiff could perform less than the full range of light work. (T. 15-19.)  Specifically, the ALJ found that Plaintiff was limited to no more than occasional crouching, crawling, stooping, kneeling, balancing, and climbing, with no more than occasional bilateral overhead reaching. (T. 18-22.)  The RFC did not include any mental health restrictions.

In making this RFC determination, the ALJ stated that he considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529" and Social Security Ruling ("SSR") 16-3p. (T. 19.)  The ALJ further stated that he considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 404.1520c. (*Id*.)  The ALJ also considered Plaintiff's subjective complaints regarding pain, symptoms, and functional limitations and found that her "statements concerning the

---

[2] Medullary sponge kidney causes small, fluid-filled cysts to form in the middle part of the kidneys, increasing the likelihood of urinary tract infections or nephrolithiasis (kidney stones).  https://my.clevelandclinic.org/health/diseases/23169-medullary-sponge-kidney [https://perma.cc/KG3X-7FZN].

intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (T. 19-20.)

At step four, the ALJ relied on the VE testimony, and found that Plaintiff was capable of performing her past relevant work as a pharmacy technician and as a reservation clerk. (T. 22-23.) Accordingly, the ALJ found that Plaintiff had not been disabled at any time from her alleged onset date of October 24, 2018 through the date of the ALJ's decision. (T. 23.)

## V.    ISSUES IN CONTENTION

Plaintiff argues that the ALJ improperly evaluated the severity and functional impact of Plaintiff's mental health impairments. (Dkt. No. 12 at 11-15.) Plaintiff further contends that the ALJ erred in his evaluation of the medical opinion evidence and longitudinal treatment record, particularly with regard to Plaintiff's difficulties with balance and need for an assistive device such as a cane or walker. (*Id*. at 16-21.) The Commissioner contends that the ALJ properly evaluated all of the record evidence, including the medical opinion evidence and Plaintiff's activities of daily living, resulting in a step two finding and RFC determination that are both supported by substantial evidence. (Dkt. No. 14 at 7-21.)

For the reasons set forth below, this Court recommends that Plaintiff's motion for judgment on the pleadings be granted, Defendant's motion for judgment on the pleadings be denied, and this case be remanded to the Social Security Administration for further administrative proceedings to allow proper evaluation of Plaintiff's mental health limitations and the necessity of assistive devices, as well as further development of the record as necessary.

## VI.    LEGAL STANDARDS

### A.    Severe Impairments

A severe impairment significantly limits the plaintiff's physical and/or mental ability to

do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a) (stating an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities). The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Monique Danielle W. v. Comm'r of Soc. Sec.*, No. 5:18-CV-184 (DNH), 2019 WL 2358529, at *4 (N.D.N.Y. June 4, 2019) (quoting *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012)). The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis. *Rhondalee T. v. Berryhill*, No. 3:17-CV-1241 (CFH), 2019 WL 1100267, at *5 (N.D.N.Y. Mar. 8, 2019) (citing *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Mark K. v. Comm'r of Soc. Sec. Admin.*, No. 5:18-CV-627 (GLS), 2019 WL 4757381, at *1 (N.D.N.Y. Sept. 30, 2019) (quoting *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999)). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a

9

severe impairment . . . ." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985). However, a combination of "slight abnormalities," having no more a minimal effect on plaintiff's ability to work, will not be considered severe. *Id*. The ALJ must assess the impact of the combination of impairments, rather than assessing the contribution of each impairment to the restriction of activity separately, as if each impairment existed alone. *Id*.

The step two analysis "may do no more than screen out *de minimis* claims." *Vogt on behalf of Vogt v. Comm'r of Soc. Sec.*, No. 18-CV-231, 2019 WL 4415277, at *4 (W.D.N.Y. Sept. 16, 2019) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). If the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five. *Dixon*, 54 F.3d at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244 (GLS/ATB), 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

## B.    RFC and Medical Opinion Evidence

### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary

10

work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means

eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No.

3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v.*

*Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v.*

*Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018);

*Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F.

Supp. 3d 349, 361 (N.D.N.Y. 2016).

    In rendering an RFC determination, the ALJ must consider objective medical facts,

diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective

symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945;

*see Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F.

Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL

587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An

ALJ must specify the functions a plaintiff is capable of performing and may not simply make

conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241,

267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150; *Stephens v. Colvin,* 200 F. Supp. 3d 349,

361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y.

2004).  The RFC assessment must also include a narrative discussion, describing how the

evidence supports the ALJ's conclusions, citing specific medical facts and non-medical

evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11

(N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Evaluating Medical Evidence

    The regulations regarding the evaluation of medical evidence have been amended for

claims filed after March 27, 2017,[3] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867–68, 2017 WL 168819 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to

---

[3]  Plaintiff's application was dated January 11, 2021. (T. 281-282.)  Thus, the new regulations apply in this case.

support his or her medical opinion(s) or prior administrative medical finding(s), the more

persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§

404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with respect to "consistency,"

"[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the

evidence from other medical sources and nonmedical sources in the claim, the more persuasive

the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at

§§ 404.1520c(c)(2), 416.920c(c)(2).

     Under the new regulations an ALJ must consider, but need not explicitly discuss, the

three remaining factors in determining the persuasiveness of a medical source's opinion.  *Id.* at

§§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical

opinions to be equally well supported and consistent with the record, but not exactly the same,

the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3)

through (c)(5).  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

## VII.   <u>ANALYSIS OF PLAINTIFF'S CLAIMS</u>

### A.  The ALJ Failed to Properly Evaluate the Effects of Plaintiff's Non-Severe Mental Health Impairments When Formulating the RFC Determination.

     In this case, the ALJ found at step two that Plaintiff's "medically determinable mental

impairments of adjustment disorder, post-traumatic stress disorder, depression, and anxiety

disorder" caused "mild limitation" in two functional areas: (1) concentrating, persisting or

maintaining pace; and (2) adapting or managing oneself. (T. 17.)   Based on that finding, and

consistent with general practice, the ALJ determined that Plaintiff's mental health impairments,

"considered singly and in combination, did not cause more than minimal limitation in the

claimant's ability to perform basic mental work activities and were therefore nonsevere." *See* 20

C.F.R. § 404.1520a(d)(1) (noting that, where degrees of limitation are at most "mild," mental impairments are to be generally found not severe).

Plaintiff argues that the ALJ erred by finding that Plaintiff's mental health impairments were not severe, and then compounded that error by failing to consider the functional limitations imposed by those mental health impairments as part of the RFC analysis. In support of this argument, Plaintiff has marshaled evidence indicative of greater mental health limitations, including her December 2020 hospitalization following a suicide attempt. (T. 1360.) The Commissioner contends, with some merit, that Plaintiff's challenge to the severity analysis is an impermissible request for the Court to reweigh the mental health evidence.

Still, this Court recommends remand even if the ALJ's step two determination remains undisturbed. "Echoing other recent decisions in this Circuit," this Court recommends remand for further administrative consideration because "regardless of whether substantial evidence supports the step two analysis, remand is required because [the ALJ] did not consider the non-severe mental impairments when determining Plaintiff's RFC." *See Dorcas M.L. v. Comm'r of Soc. Sec.*, No. 8:20-CV-1258 (DJS), 2022 WL 580448, at *3 (N.D.N.Y. February 25, 2022), (citing *Laura Anne H. v. Saul*, No. 6:20-CV-397 (TWD), 2021 WL 4440345, at *9 (N.D.N.Y. Sept. 28, 2021)); *Mandy C. v. Saul*, No. 5:18-CV-982 (CFH), 2020 WL 1245348, at *6 (N.D.N.Y. Mar. 16, 2020) (holding that if an ALJ finds that non-severe impairments result in "mild" restrictions, the ALJ must analyze those restrictions in determining the claimant's RFC.); *see also Coulter v. Comm'r of Soc. Sec.*, No. 22-CV-1149 (RWL), 2023 WL 3346505, at *7 (S.D.N.Y. May 10, 2023) ((remanding where ALJ did not explain why she concluded that plaintiff's mild mental health limitations did not result in any functional limitations in the RFC); *MacDonald v. Comm'r of Soc. Sec.*, No. 17-CV-921, 2019 WL 3067275, at *3 (W.D.N.Y. July

11, 2019) ("if the ALJ 'find[s] mild restrictions' resulting from a nonsevere impairment, the ALJ must address those restrictions as part of his RFC analysis) (internal citation omitted).

In this case, the ALJ provided little in the RFC analysis regarding Plaintiff's mental health limitations, and that minimal analysis includes a significant factual error. Specifically, the ALJ described the "persuasive" August 28, 2020 opinion of consultative psychological examiner Dr. Dante Alexander as concluding "that the claimant did not have any mental limitations." (T. 21.) In fact, Dr. Alexander had actually opined that Plaintiff had "mild limitation" in her ability to "sustain concentration and perform a task at a consistent pace" and her ability to "regulate emotions, control behavior, and maintain well-being." (T. 935.)

The Commissioner contends that the difference between describing "no mental impairment" and "mild" impairment is a harmless proofreading error. (Dkt. No. 14, at 11.) This Court strongly disagrees given its potential impact on the judicial assessment of the ALJ's RFC determination. On remand, "the ALJ may find that Plaintiff's mental impairments are inconsequential and, thus, reject the need to incorporate mental limitations into the RFC" – but he must explain his reasons for doing so. *Catherine H. v. Kijakazi*, No. 8:23-CV-160 (GTS/ATB), 2023 WL 9549491, at *6 (N.D.N.Y. December 15, 2023), *rep't-rec. adopted*, 2024 WL 476639, (N.D.N.Y. February 7, 2024). In addition, the ALJ determined that Plaintiff could perform her past relevant work in reliance on VE testimony that never addressed the potential impact of any mental health limitations. (T. 60-65.) Thus, there is at least a reasonable likelihood that a different result could be reached if the ALJ properly considered Plaintiff's non-severe mental impairments when evaluating her RFC. *Novas v. Comm'r of Soc. Sec.*, No. 22-CV-1020 (MKV), 2023 WL 2613550 (S.D.N.Y. Mar. 23, 2023 ) ("[W]hen posing hypotheticals to the VE, the ALJ should inquire about even 'mild' limitations on mental functioning,

particularly when the issue is whether the plaintiff can perform skilled past work.")  Because this court "cannot be certain that the ALJ actually considered [Plaintiff's] mental issues when addressing her RFC," remand for further administrative proceedings is necessary.  *Mandy C.*, 2020 WL 1245348, at *6 (quoting *MacDonald*, 2019 WL 3067275, at *4).

    **B.**    **The ALJ Failed to Properly Evaluate the Medical Necessity of Plaintiff's Cane and Walker.**

    Plaintiff contends that the ALJ erred in assessing the medical necessity of her cane and walker and failed to incorporate such necessity into the RFC. (Dkt. No. 12 at 18.)  This Court agrees, and further recommends remand on this ground.  To be medically necessary, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which the assistive device is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain, and any other relevant information)."  *Christine Lee S. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1008 (CFH), 2022 WL 103108, at *4 (N.D.N.Y. January 11, 2022) (quoting SSR 96-9p, *Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, 1996 WL 374185, at *7 (July 2, 1996)).  "A cane need not be prescribed to be considered medically necessary, but there must be specific medical documentation establishing the need for it and the circumstances surrounding that need."  *Shepard v. Comm'r of Soc. Sec.*, No. 5:16-CV-1347 (ATB), 2017 WL 5508377, at *11 (N.D.N.Y. Nov. 15, 2017).

    Plaintiff has the burden to establish medical necessity.  *See Wilson v. Comm'r of Soc. Sec.*, No. 6:13-CV-643 (GLS/ESH), 2014 WL 4826757, at *11 (N.D.N.Y. Sept. 29, 2014).  A physician's mere observation of a patient using a cane or having an unsteady gait does not satisfy

this burden. *See Hoke v. Colvin*, No. 1:14-CV-0663 (GTS/CFH), 2015 WL 3901807, at *14

(N.D.N.Y. June 25, 2015). Still, "when there is medical documentation about a cane in the

record, an ALJ's failure to determine whether the cane is medically necessary or to incorporate

the use of a cane into the RFC is legal error." *Charles F. v. Comm'r of Soc. Sec*., No. 19-CV-

1664 (LJV), 2021 WL 963585, at *4 (W.D.N.Y. Mar. 15, 2021)

At her hearing, Plaintiff testified that she had walked with a cane on a daily basis and

used a walker on those days when she particularly struggled to maintain her balance. (T. 45-48.)

She indicated that a physician had first recommended the use of a cane in 2017 due to her history

of falls and encouraged her to use the walker when her symptoms worsened in 2018. (T. 46.)

Plaintiff testified that she relied on the assistive devices both inside and outside the house, but

occasionally walked unassisted for short distances within her home, such as moving from the

bedroom to the bathroom. (T. 46-47.)

The ALJ considered Plaintiff's testimony and recognized that numerous treatment notes

described Plaintiff's use of a cane during appointments, but found:

> There is no objective evidence in the record satisfying the requirements of SSR
> 96-9p. In fact, the internal medicine consultative examiner noted that the claimant
> had normal gait without using an assistive device. [citation omitted] Therefore,
> the use of an assistive device is not included in the residual functional capacity.

(T. 20-21.)

This cursory analysis falls short of the inquiry required by SSR 96-9p and the controlling

caselaw. Plaintiff testified that her physicians recommended use of a cane, and although the

record does not contain a specific prescription for a cane or walker, it offers numerous examples

of Plaintiff's treatment providers considering her a fall risk. (T. 46, 744, 1180, 1384, 1873.) This

evidentiary gap arguably imposed an obligation on the ALJ to further develop the record as to

17

whether a cane or other assistive device was required.  *See De Camacho v. O'Malley*, No. 22-CV-7779 (RWL), 2024 WL 687286, at *10 (S.D.N.Y. February 20, 2024) (remanding for further development of the record to resolve "objective fact" of whether or not cane had been prescribed).  At the least, the medical necessity of Plaintiff's cane and walker merited greater analysis than the ALJ's reliance on Plaintiff's gait during her consultative examination and other office visits.  It is recognized that "[e]xhibiting a steady gait in an office visit – presumably no more than several steps – . . . may or may not be indicative of 'sustained mobility throughout the relevant period. . .'"  *De Camacho*, 2023 WL 7103304, at *10.  This error cannot be considered harmless, because use of a cane or walker may impact Plaintiff's ability to perform her past relevant light or sedentary work.  *Lausell v. Comm'r of Soc. Sec.*, No. 19 Civ. 2016 (SLC), 2021 WL 797074, at *16 (S.D.N.Y. Mar. 1, 2021) (remanding because medical necessity of cane could be "outcome-determinative" of Plaintiff's ability to perform light or sedentary work).

### C.    Plaintiff's Other Challenges to the ALJ's Physical RFC Assessment Do Not Present Independent Grounds for Remand.

Unlike the mental health impairments, the ALJ's RFC determination included extensive analysis of the objective and medical opinion evidence related to Plaintiff's physical functional limitations. (T. 19-22.)  This analysis will likely have to be revisited on remand in light of the ALJ's consideration of the medical necessity of Plaintiff's assistive device.  Still, this Court will briefly address Plaintiff's remaining arguments to determine whether she has raised additional grounds for remand.

Plaintiff contends that the ALJ erred in its analysis of her physical limitations by (1) relying on the "stale" opinion of non-examining consultant physicians who only assessed Plaintiff's physical limitations prior to June 30, 2020; and (2) ignoring objective medical

evidence supportive of Plaintiff's testimony and consistent with the opinion of Plaintiff's primary care physician. (Dkt. No. 12 at 18-20.) This Court has reviewed each of these contentions and finds no additional basis for remand.

As part of the RFC analysis, the ALJ considered the opinions of Dr. J. Sharif-Najafi and Dr. R. Mohanty, state agency consultants who reviewed Plaintiff's then-current medical records. (T. 21, 106-109, 125-127.) On May 6, 2021, Dr. Sharif-Najafi opined that Plaintiff could occasionally lift and/or carry up to twenty pounds, and frequently lift or carry up to ten pounds; could stand and/or walk for a total of about six hours over the course of an eight hour workday; and could sit for the same total period of time, with normal breaks. (T. 107.) In Dr. Sharif-Najafi's opinion, Plaintiff could only occasionally climb ramps, stairs, ladders, ropes or scaffolds; and could only occasionally balance, stoop, kneel, crouch or crawl. (T. 107-108.) On June 7, 2021, Dr. Mohanty reviewed Plaintiff's medical records in response to her reconsideration request. (T. 125-127.) Dr. Mohanty largely affirmed Dr. Sharif-Najafi's opinion, but found that Plaintiff was capable of frequent kneeling, crouching, and crawling. (T. 126.)

The ALJ found the Sharif-Najafi and Mohanty opinions to be persuasive because they were generally consistent with the objective evidence of Plaintiff's "strength, sensation, reflexes, and gait." (T. 21.) Still, the ALJ found that subsequent medical and testimonial evidence showed greater restrictions in Plaintiff's ability to reach overhead and incorporated those additional limitations into the RFC. (T. 19, 21, 55-58, 1342.)

Plaintiff contends that the Sharif-Najafi and Mohanty opinions should not have been considered persuasive because the consultants did not consider her condition between the original date last insured of June 30, 2020 and the revised date last insured of December 31, 2022. (Dkt. No. 12 at 20.) This argument does not present grounds for remand. To begin with,

Plaintiff has not identified any significant deterioration in her condition that would render either consultant's opinion stale. By itself, "[a] gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion." *Majdandzic v. Comm'r of Soc. Sec.*, No. 17-CV-1172, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018). Instead, there must be, a "meaningful change" in plaintiff's condition after the opinion was rendered. *Lamar v. Comm'r of Soc. Sec.*, No. 18-CV-829, 2020 WL 548376, at *3 (W.D.N.Y. Feb. 4, 2020); *see also Maxwell H. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0148 (LEK/CFH); 2020 WL 1187610, at *5 (N.D.N.Y. March 12, 2020) (holding that a consultative opinion may become stale "if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision.").

Furthermore, the ALJ addressed staleness concerns by expressly considering the consistency of the consultants' opinions with the longitudinal record and imposing greater restrictions on overhead reaching in light of more recent evidence. (T. 21.) The ALJ's decision also demonstrates that the ALJ did not rely on the consultants' opinion alone in crafting the RFC determination, but also incorporated other evidence that he deemed consistent with the overall record. This included portions of the opinion of Dr. Kautilya Puri, who performed an August 2020 consultative examination of Plaintiff, treatment records dated as recently as December 2021, and Plaintiff's hearing testimony. (T. 20, 47, 55, 2268.)

Plaintiff's primary care physician, Dr. Eric Stamberg, completed an opinion form addressing Plaintiff's physical functional limitations on December 9, 2021. (T. 2238-2239.) Dr. Stamberg opined that Plaintiff could not walk a single city block without needing to rest or experiencing significant pain, could only sit for sixty minutes at one time and a total of two hours each workday, could stand or walk for only ten minutes at one time, totaling less than an hour

over the course of a workday; needed to change positions at will; and required hourly

unscheduled fifteen minute breaks. (T. 2238.)  In Dr. Stamberg's opinion, Plaintiff was unable to

lift even minimal weight. (T. 2239.)  He further opined that Plaintiff's impairments would cause

her to be absent from work more than four times per month. (*Id*.)

The ALJ deemed Dr. Stamberg's opinion to be "non-persuasive." (T. 22.)  He noted that

the opinion did not include any narrative, so the ALJ evaluated its supportability and consistency

with the less restrictive findings in the primary care physician's own treatment notes and the

broader medical record. (T. 20, 22.)  On its face, the ALJ's evaluation of Dr. Stamberg's opinion

is supported by substantial evidence.  *See Colgan v. Kijakazi*, 22 F.4th 353, 360-61 (2d Cir.

2022) ("[W]e take this occasion to reassert and clarify that the nature of an ALJ's inquiry in

disability factfinding turns on the substance of the medical opinion at issue—not its form—and

ultimately whether there is reasonable evidence in the record that supports the conclusions drawn

by the medical expert . . ."); *Noreen D. v. Berryhill*, No. 18-CV- 722 (NAM), 2019 WL 2171116,

at \*11 (N.D.N.Y. May 20, 2019) (ALJ had substantial evidence to discount treating source

opinion where it "appears both internally inconsistent with his own records, and inconsistent

with the record evidence as a whole.").

Plaintiff has not identified any record evidence that rises to the level of the extreme

functional limitations described by Dr. Stamberg.  Instead, Plaintiff contends that the ALJ

ignored more restrictive findings in the medical record in favor of those that suggested "normal

clinical findings of strength, sensation, reflexes, straight-leg raise, and gait." (T. 20, 22.)  This

Court's review shows that rather than ignore these records, the ALJ's decision includes an

extensive discussion of Plaintiff's pain treatment, including medication and physical therapy, as

well as addresses her recent hospitalizations for falls and other injuries. (T. 20-22.)  Despite

taking these incidents into account, the ALJ still concluded that the longitudinal record suggested "a much less restrictive degree of limitation" than opined by Dr. Stamberg. (T. 20, 22.)

Similarly, the ALJ considered Plaintiff's hearing testimony regarding the impact of excruciating pain on her activities of daily living but found no support for extreme limitations in the broader medical record. (T. 20.) Still, the ALJ did not wholly reject Plaintiff's testimony regarding her functional limitations. Rather, the ALJ adopted Plaintiff's description of her difficulties with overhead reaching because he found support for this specific limitation in the overall record. (T. 21.)

On the current record, Plaintiff's challenge to the ALJ's assessment of Dr. Stamberg's opinion and her testimony is essentially "premised upon a disagreement over how the ALJ resolved arguably conflicting evidence" about Plaintiff's physical functional limitations. *See Kimball v. Comm'r of Soc. Sec.*, No. 6:14-CV-0698 (LEK/ATB), 2015 WL 4251163, at *9 (N.D.N.Y. July 13, 2015). This court will not reweigh the evidence presented to the ALJ. *See Warren v. Comm'r of Soc. Sec.*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *rep't-rec. adopted*, 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) be **GRANTED**; Defendant's motion for judgment on the pleadings (Dkt. No. 14) be **DENIED** and that the matter be **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    March 11, 2024
          Binghamton, NY

Miroslav Lovric
U.S. Magistrate Judge